Timothy OGLE, Appellant (Plaintiff),

v.

CATERPILLAR TRACTOR CO., and Wyoming Machinery Co., Appellees (Defendants).

No. 85–154.

Supreme Court of Wyoming.

March 19, 1986.

William D. Norman, Casper, for appellant.

Paul Kapp (argued) of Godfrey & Sundahl, Cheyenne, for Caterpillar Tractor Co.

Patrick J. Murphy (argued), and Stuart R. Day of Williams, Porter, Day & Neville, Casper, for Wyoming Machinery Co.

Before THOMAS, C.J., BROWN, CARDINE and URBIGKIT, JJ., and GUTHRIE, J. Ret.

CARDINE, Justice.

In this products liability action, the district court granted summary judgment in favor of appellee Caterpillar Tractor Company, the manufacturer, and appellee Wyoming Machinery Company, the dealer. The court held that the applicable statutes of limitation barred the claims of appellant, Timothy Ogle, for negligence and breach of warranty, and that the suit could not be sustained because the caterpillar scraper

which allegedly caused the accident had been altered after it left the hands of the manufacturer and dealer.

The questions presented for our determination are:

(a) Whether appellant's causes of action in negligence and breach of warranty were filed within the limitation periods provided in §§ 1–3–105(a)(iv)(C) and 34–21–299.5, W.S.1977, respectively;

(b) Whether appellant's strict liability claim is recognized in Wyoming; and, if so, whether it was properly and timely filed; and

(c) Whether appellees' material alteration argument justified summary judgment against appellant on any of his claims for relief.

We affirm in part and reverse in part.

On January 9, 1980, appellant was injured when he fell from the hood of a caterpillar scraper he was operating at a uranium mine in Carbon County. Appellant's employer, Utah International, had purchased the scraper in 1976 from appellee Wyoming Machinery Company. It had been manufactured by appellee Caterpillar Tractor Company.

On January 9, 1984, exactly four years after his accident, appellant brought suit in the district court against Wyoming Machinery and Caterpillar Tractor stating three claims for relief. The first claim sounded in negligence and the second in breach of warranty. The third, although it did not use the words "strict liability," was intended by appellant to allege strict liability in tort. In it, appellant states that appellees put the scraper on the market representing that "it could be safely operated while doing the job for which it was intended," even though it was "unsafe for its intended use." He also alleged that he "was injured as a direct result of the defects herein alleged."

In their answers, appellees raised the tort and warranty statutes of limitation as affirmative defenses. Sections 1–3–105 and 34–21–299.5, W.S.1977. After discovery had begun, they moved for summa-

ry judgment on the same grounds. Caterpillar Tractor also added a third ground for summary judgment, arguing that the accident was caused by material alterations to the scraper made by Utah International after purchase.

In support of their summary judgment motions, appellees filed affidavits, exhibits and depositions which established the date that the scraper was sold to Utah International, that appellant knew the scraper was dangerous before the accident occurred, and that some of its safety features—including a handhold, metal step, and non-slip tape—had been removed or worn down. Appellant did not file affidavits or contradicting exhibits but did submit a brief to the district court on the day the motion was argued.

The court granted summary judgment holding that the statute of limitations on the warranty count (§ 34–21–299.5, W.S. 1977) had expired, that appellant had failed to produce affidavits showing that the negligence statute of limitations had not expired, and that the scraper had been altered after it was sold to appellant's employer. The court's order does not indicate why the court dismissed appellant's strict liability claim. The court might have dismissed the claim based on the statute of limitations or because of alterations in the scraper. It is also possible that because strict liability in tort has not yet clearly been adopted in Wyoming, the court read appellant's third claim as simply a redundant count alleging breach of warranty.

We will discuss the propriety of summary judgment from the perspective of each of the three causes of action: negligence, warranty, and strict liability in tort. We will then analyze the manufacturer's material alteration argument to determine whether it supports the district court's decision.[1]

---

1. Rule 5.01, W.R.A.P., requires that all appellate briefs contain a table of contents. Appellant has not included one in his brief. We have overlooked this rule violation because it has not interfered significantly with our ability to understand appellant's arguments. Members of

## NEGLIGENCE

■ An injured person's negligence claim is forever barred if he does not bring an action within four years after the cause of action accrues. Section 1–3–105(a)(iv)(C), W.S.1977. A cause of action in negligence accrues when "the injured party knows or reasonably ought to know that some damage has resulted from the wrongful act." *Anderson v. Bauer,* Wyo., 681 P.2d 1316, 1321 (1984). Appellant was injured on January 9, 1980 and knew of his injury immediately. He was required to file his complaint within four years of that date—i.e., on or before January 9, 1984. He filed his complaint on that day, and it was timely.

■ The appellees did not produce affidavits or other materials showing that appellant suffered injuries more than four years before filing his complaint. Their claim that the statute had run was based upon an apparent misreading of our clear rule of law established in *Anderson v. Bauer,* supra. Thus, appellees argued that a negligence action can accrue before the damage element has occurred. They were wrong as a matter of law, and the district court was required to deny the motion even though appellant failed to supply any affidavits or exhibits of his own. A motion for summary judgment should not be granted simply because the nonmoving party fails to resist it. *Metzger v. Kalke,* Wyo., 709 P.2d 414 (1985). "A movant must first submit evidence which establishes a prima facie case * * * and show that it is 'entitled to a judgment as a matter of law.'" (Citations omitted.) *Shanor v. A–PAC, Ltd.,* Wyo., 711 P.2d 420 (1986), citing Rule 56(c), W.R.C.P. We reverse the court's summary judgment as to the negligence cause of action and remand for further proceedings on that claim.

---

the Bar should take note, however, that this rule violation might result in dismissal in the proper case. See *37 Gambling Devices (Cheyenne Elks Club and Cheyenne Music and Vending, Inc.) v. State,* Wyo., 694 P.2d 711, 713 (1985).

## BREACH OF WARRANTY

Wyoming has adopted the Uniform Commercial Code's statute of limitations for breach of contract in sales cases.[2] Section 34–21–299.5, W.S.1977 (§ 2–725, Uniform Commercial Code (U.C.C.)) states in pertinent part:

"(a) An action for breach of any contract for sale must be commenced within four (4) years after the cause of action has accrued.

\* \* \* \* \* \*

"(b) A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. *A breach of warranty occurs when tender of delivery is made,* except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered."

On its face, this statute appears to bar appellant's warranty claim because appellant filed his complaint in 1984, more than four years after the scraper was tendered to his employer in 1976.[3] Indeed, most jurisdictions apply the statute literally and hold that a breach of warranty action for personal injuries is barred when brought more than four years after tender.[4]

A substantial minority of state courts divide warranty claims into those involving commercial damages and those involving personal injury. They apply a tort limitations period, accruing at the time the plaintiff discovers his injury, to the warranty claims for personal injury. It is important to note, however, that sixteen of these courts base their holdings on unique statutory schemes which differ from U.C.C. § 2–725 or contain an altered version of the statute itself. *Williams v. West Penn Power Company,* 502 Pa. 557, 467 A.2d 811, 817, n. 18 (1983). For example, the Alabama legislature has adopted its own version of U.C.C. § 2–725 which provides that if consumer goods are involved, a cause of action for breach of warranty accrues upon the date of personal injury rather than the date of tender. *Simmons v. Clemco Industries,* Ala., 368 So.2d 509, 512 (1979); see also, e.g., *Ouellette v. Sturm, Ruger & Company, Inc.,* Me., 466 A.2d 478 (1983); *Franzen v. Deere and Company,* Iowa, 334 N.W.2d 730 (1983). These legislatures have apparently modified U.C.C. § 2–725 because otherwise the clear language of the statute of limitations is a bar to all breach of warranty actions, including those for personal injury, if

---

**2.** A breach of warranty is one form of breach of contract. Express and implied warranties are created and limited by §§ 34–21–230 through 34–21–235, W.S.1977 (U.C.C. §§ 2–313 through 2–318). Damages for breach of warranty are provided by § 34–21–293, W.S.1977 (U.C.C. § 2–714).

**3.** Appellant has not argued that there was an explicit warranty extending to future performance. Therefore, the discovery exception of § 34–21–299.5(b), W.S.1977, does not apply. And, even if it did apply, appellant still missed the limitations period because, by his own admission, he discovered the breach of warranty prior to 1980, more than four years before he filed his complaint.

**4.** This is a heavily litigated point of law. Many state courts and many federal courts exercising their diversity jurisdiction have reached the issue. Because it is a matter of state law, the most authoritative decisions have come from state supreme courts, and of these courts, a clear majority takes the simple position that the limitations period provided in U.C.C. § 2–725 is a bar to all breach of warranty actions brought more than four years after tender of delivery, regardless of the type of damages suffered. Some of the states whose highest courts have taken the majority view are: Arkansas, *General Motors Corporation v. Tate,* 257 Ark. 347, 516 S.W.2d 602, 605 (1974); Delaware, *Johnson v. Hockessin Tractor, Inc.,* Del.Super.Ct., 420 A.2d 154 (1980); Illinois, *Berry v. G.D. Searle & Company,* 56 Ill.2d 548, 309 N.E.2d 550, 70 A.L.R.3d 304 (1974); New York, *Heller v. United States Suzuki Motor Corporation,* 64 N.Y.2d 407, 488 N.Y.S.2d 132, 477 N.E.2d 434 (1985); Oregon, *Redfield v. Mead, Johnson & Company,* 266 Or. 273, 512 P.2d 776 (1973); Pennsylvania, *Williams v. West Penn Power Company,* 502 Pa. 557, 467 A.2d 811 (1983); Tennessee, *Layman v. Keller Ladders, Inc.,* 224 Tenn. 396, 455 S.W.2d 594 (1970); and, Texas, *Garcia v. Texas Instruments, Inc.,* Tex., 610 S.W.2d 456, 20 A.L.R.4th 900 (1980). See also Annot., 20 A.L.R.4th 915, 920–921 (1983).

brought more than four years after tender of delivery of the product.

Eliminating states which have adopted special statutory schemes, just two courts remain which have construed the official version of U.C.C. § 2–725 to provide a different statute of limitation for tort claims as opposed to commercial damage cases. See Annot., 20 A.L.R.4th 915, 929–930, supra; *Parish v. B.F. Goodrich Company*, 395 Mich. 271, 235 N.W.2d 570 (1975). We would have to follow this small minority of courts in order to hold that the Wyoming version of U.C.C. § 2–725 (§ 34–21–299.5, W.S.1977) does not bar appellant's claim.

The Wyoming legislature has adopted the official version of U.C.C. § 2–725 and has not amended the basic tort statute of limitations, § 1–3–105(a)(iv)(C), W.S.1977, to expressly supersede § 34–21–299.5 (U.C.C. § 2–725) in breach of warranty cases.[5]

■ We agree with the construction of § 34–21–299.5, W.S.1977 (U.C.C. § 2–725, official version) that has been adopted by the majority of states and hold that a plaintiff bringing a breach of warranty action for personal injury must file his suit within four years of the date on which the warranted goods are tendered. This holding rests on more than just the plain language of the statute. It is supported by the statute's legislative history in Wyoming and by the intent of its original drafters.

■ The Wyoming legislature adopted U.C.C. § 2–725 at the same time that it adopted U.C.C. § 2–318. Session Laws of Wyoming, 1961, ch. 219, §§ 2–318, 2–725. Section 2–318 (now codified at § 34–21–235, W.S.1977) extended warranty protection to

"any person who may reasonably be expected to use, consume, or be affected by the goods and who is injured by breach of the warranty."

The simultaneous enactment of §§ 2–318 and 2–725 indicates that the legislature intended the limitations period of § 2–725 to apply to personal injury actions created by § 2–318. See *Heller v. United States Suzuki Motor Corporation*, 64 N.Y.2d 407, 488 N.Y.S.2d 132, 477 N.E.2d 434, 436 (1985). If the Wyoming legislature did not intend the UCC's explicit statute of limitations to apply to the breach of warranty actions involving tortious injury or damage, then it could have said so in the same manner as have many other state legislatures.

In the absence of a legislative enactment providing otherwise, we think the plain language of § 34–21–299.5 (U.C.C. § 2–725) should be followed. *Redfield v. Mead, Johnson & Company*, 266 Or. 273, 512 P.2d 776, 777 (1973). The statute purports to apply to the breach of "any" contract for sale. *Berry v. G.D. Searle & Company*, 56 Ill.2d 548, 309 N.E.2d 550, 554, 70 A.L.R.3d 304 (1974). It contains no language which indicates that it does not apply to a breach of warranty causing personal injuries. The UCC's breach of warranty action is a statutory cause of action which has both tort and contract aspects and which applies by its own terms when either economic or personal damages are suffered. *Williams v. West Penn Power Company*, supra, 467 A.2d at 817. The broad statutory cause of action for breach of warranty is subject to the statutory limitations period provided by the statute. *Johnson v. Hockessin Tractor, Inc.*, Del.Super.Ct., 420 A.2d 154, 158 (1980); *Redfield v. Mead*,

---

**5.** The basic tort statute, § 1–3–105(a)(iv)(C), W.S.1977, simply provides that suit must be brought within four years after the accrual of a cause of action based on "[a]n injury to the rights of the plaintiff, not arising on contract and not herein enumerated." In comparison, Iowa's tort statute of limitations, which was held to explicitly supersede the Iowa version of U.C.C. § 2–725, reads as follows:

"'Actions may be brought within the times herein limited, respectively, after their causes

accrue, and not afterwards, except when otherwise specifically declared:

    \*    \*    \*    \*    \*    \*

"2. \* \* \* Those found on injuries to the person \* \* \* *whether based on contract or tort* \* \* \* within two years.'" *Franzen v. Deere and Company*, Iowa, 334 N.W.2d 730 (1983), quoting Iowa Code § 614.1. (Emphasis added.)

*Johnson & Company,* supra, 512 P.2d at 778; *Layman v. Keller Ladders, Inc.,* 224 Tenn. 396, 455 S.W.2d 594, 596 (1970).

The few courts that have refused to apply U.C.C. § 2–725 to warranty actions involving personal injury have pointed out that the statute could bar a plaintiff's suit before there is an injury making the suit actionable. They argue that no rational statute of limitations can run before a cause of action arises. E.g., *Parish v. B.F. Goodrich Company,* supra, 235 N.W.2d at 573. In essence, these courts assume that § 2–725 was intended to keep stale claims out of the court system, and they reason that it exceeds that function when it eliminates claims that are freshly matured.

■ We disagree with the premise adopted by these courts. Section 2–725 was not intended to punish plaintiffs who allow their claims to grow stale. Instead, it was enacted to govern the out-of-court commercial conduct of sellers. The official comment to § 2–725 states in part:

"This Article takes sales contracts out of the general laws limiting the time for commencing contractual actions and selects a four year period as the most appropriate to modern business practice. This is within the normal commercial record keeping period." 1976 Official Text.

The drafters of § 2–725 apparently thought that manufacturers, dealers or other sellers should not be forced to indefinitely retain their warranty records. If a warranty action could be brought without regard to the date a product was tendered, then as a practical matter businessmen could never freely discard such records because of their importance in defending a warranty suit.[6] In order to permit sellers to discard their warranty records within a reasonable time after sale, the drafters created a statute of limitations tied directly to

the date of sale and not to the highly variable date of injury.

It is also claimed that the application of U.C.C. § 2–725 to personal injury warranty actions creates variable limitations periods covering the three causes of action typically raised in a products liability suit. Our holding, according to these courts, creates one limitations period for negligence and strict liability and another for breach of warranty. *Parish v. B.F. Goodrich Company,* supra, 235 N.W.2d at 574; *Heavner v. Uniroyal, Inc.,* 63 N.J. 130, 305 A.2d 412, 420 (1973). We do not see this as a significant problem. It is not difficult for a court to consider each claim separately and apply the appropriate limitations period to each one. *Williams v. West Penn Power Company,* supra, 467 A.2d at 817. The courts already do this in many multi-count lawsuits. Moreover, it is far less complicated to split products liability cases by cause of action than it is to split breach of warranty claims based on the type of damage suffered. If we adopt the tort statute of limitations for warranty claims involving personal injury and the U.C.C. statute for warranty claims involving commercial loss, a case would inevitably arise in which both commercial and personal damages are suffered as a result of one breach of warranty. The warranty claim would have to be split into two parts for statute of limitations purposes, hardly a simplification. *Johnson v. Hockessin Tractor, Inc.,* supra, 420 A.2d at 158.

Finally, it is worth noting that an injured plaintiff whose warranty action is barred by U.C.C. § 2–725 can still bring an action in either negligence or strict liability within four years after the injury. As a practical matter, our reading of § 34–21–299.5, W.S. 1977, will prevent few, if any, deserving plaintiffs from seeking adequate redress for their injuries. *Redfield v. Mead, John-*

---

6. This rationale does not apply to a strict liability suit where the key issue is whether the product was defective and where the existence of an express or implied warranty is irrelevant. A businessman would not be forced to retain old warranty records in order to defend a strict liability action. He might save other records involving design and manufacture of the product that are relevant to possible defects.

*son & Company,* supra, 512 P.2d at 778–779.[7]

In summary, we hold that a plaintiff must bring a breach of warranty action for personal injury within four years after the warrantied goods have been tendered. Here appellant failed to commence his action for breach of warranty within that time, and the summary judgment on the second cause of action is affirmed.

### STRICT LIABILITY

In its order, the district court outlined its reasons for granting summary judgment on appellant's negligence and breach of warranty claims. But the court did not state the reasons for granting summary judgment as to the strict liability claim. In their briefs, appellees have attempted to fill the gap by offering several rationales. First, they argue that strict liability in tort is not available as a cause of action in Wyoming since this court has declined to adopt the doctrine on several occasions. See, e.g., *Buckley v. Bell,* Wyo., 703 P.2d 1089 (1985). Second, they contend that appellant's third claim was merely a redundant breach of warranty claim which was filed after the warranty statute of limitations expired. Third, appellees raise the possibility that even if strict liability was properly pled in appellant's third count, it was barred by the general tort statute of limitations. Finally, according to appellees, material alterations in a product after sale can be a complete defense to strict liability in tort. They claim that their uncontradicted summary judgment exhibits prove that the scraper was materially altered prior to the accident.

We will analyze each of these possible grounds for summary judgment be-cause "[i]f the judgment against the appellant is sustainable on any basis, it must be affirmed." *Valentine v. Ormsbee Exploration Corporation,* Wyo., 665 P.2d 452, 456 (1983). But before we can begin our analysis of the pleadings, the statute of limitations, and defenses raised, we must first determine whether the doctrine of strict liability is available to state a claim in Wyoming. We hold that it is. Today we join the overwhelming majority of American jurisdictions and hold that strict liability in tort is a valid cause of action in Wyoming.[8] It is truly an independent cause of action that can be successfully pled and proven without regard to a manufacturer's or seller's negligence and without regard to the UCC's restrictions on breach of warranty actions.

While we recognize that some jurisdictions have departed from the parameters of the strict liability action that are set forth in § 402A, Restatement, Second, Torts, we believe that the restatement definition forms the best starting place from which the cause of action can evolve in Wyoming. The definition is reasonably complete and will allow the district courts and Wyoming lawyers to litigate these cases with some measure of confidence. In addition, many of the finer points that are not explicitly covered in § 402A or its official comments have been considered and resolved elsewhere. The district courts will enter well-charted territory on most strict liability issues that arise. We adopt Restatement, Second, Torts § 402A (1965) which provides:

"402A. *Special Liability of Seller of Product for Physical Harm to User or Consumer*

---

7. Later in this opinion we will discuss the viability of the doctrine of strict liability in Wyoming. Once a jurisdiction adopts strict liability in tort, the somewhat artificial warranty cause of action created by § 2-318 of the U.C.C. becomes of minor significance to the injured user of a defective product. In fact, it has been suggested that state legislatures relegate the UCC breach of warranty action to a purely commercial role where strict liability in tort is recognized. W.

Keeton, Prosser and Keeton on Torts § 98, at 694 (5th ed. 1984).

8. The only four states other than Wyoming that have not adopted strict liability in tort by statute or decision are Delaware, Utah, Virginia, North Carolina, and the District of Columbia. 2 L. Frumer & M. Friedman, Products Liability 3–8 to 3–24 (1985).

"(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

"(a) the seller is engaged in the business of selling such a product, and

"(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

"(2) The rule stated in Subsection (1) applies although

"(a) the seller has exercised all possible care in the preparation and sale of his product, and

"(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller."

### REASONS FOR STRICT LIABILITY

As the Vermont Supreme Court noted when it adopted strict liability in tort, "[a]n extensive review of the history and development of the doctrine embodied in the Restatement would serve little purpose." *Zaleskie v. Joyce*, 133 Vt. 150, 333 A.2d 110, 113 (1975). The history of the doctrine is well known and readily discoverable in basic torts treatises. See, e.g., W. Keeton, Prosser and Keeton on Torts §§ 96–97, at 681–692 (1984). On the other hand, although the policies supporting the adoption of § 402A have been discussed elsewhere, we think it worth noting some of the policies that we find persuasive. While these policy rationales are not exclusive, they should help guide the district courts and litigants who will inevitably grapple with strict liability law.

When a defective article enters the stream of commerce and an innocent person is hurt, it is better that the loss fall on the manufacturer, distributor or seller than on the innocent victim. This is true even if the entities in the chain of production and distribution exercise due care in the defective product's manufacture and delivery. They are simply in the best position to either insure against the loss or spread the loss among all the consumers of the product. W. Prosser, The Assault upon the Citadel, 69 Yale L.J. 1099, 1120 (1960); W. Keeton, supra, at 692–693; Restatement, Second, Torts § 402A, comment c (1965).

There are many products liability cases in which the plaintiff must essentially show negligence in order to prove that a product is defective. And there are cases where the doctrine of res ipsa loquitur can provide the missing link to an otherwise solid negligence case. Under these circumstances, the strict liability action is unnecessary to ensure that the deserving plaintiff is made whole. There are cases, however, in which the negligence action proves inadequate. For instance, when a person is injured by a defect that causes the wheel of a car to come apart, it may be practically impossible to establish that the manufacturer's negligence caused the failure. Let us assume that 5,000,000 wheels for automobiles were manufactured and one was defective. The manufacturing, inspection, and testing procedures may have exceeded engineering standards. Due care was exercised and yet there was one defective wheel. Thus, there may have been an entire absence of negligence in the total manufacturing and sale of the product, yet a totally innocent person was injured when the defective wheel came apart. On these facts, that person justly ought to have a claim. But he can recover only if strict liability has been adopted and the fault requirement discarded. Manufacturers and distributors can easily and efficiently apportion the injured person's loss among themselves and ultimately among their customers, and that is better than affording no relief to the person injured. W. Prosser, The Assault upon the Citadel, supra, at 1116–1117.

The problems with the negligence cause of action when applied to products have been recognized for many years and courts and legislatures long ago responded by creating a cause of action in breach of warranty. E.g., §§ 34–21–230 through 34–21–235, W.S.1977. Whenever strict liability in tort is suggested, those opposing the doctrine argue that the warranty action is adequate

in products cases. This argument has consistently failed, however, because most courts have recognized

"that strict liability on 'warranty' concepts based on implied misrepresentation or promise involving an objective · manifestation of an intent to guarantee carries far too much luggage in the way of undesirable complications, and is more trouble than it is worth." W. Keeton, supra, at 692; see also Annot., 13 A.L.R.3d 1057, 1074 (1967).

Earlier in this opinion we discussed the commercial connotations of the warranty action which interfere with its usefulness to those suffering personal injury. We pointed out that the UCC's breach of warranty action carries a statute of limitations which begins to run on the date of tender and can bar an injured user from recovery before he suffers an injury. Because the statute is explicit and has some justification in a commercial setting, we declined to give it a strained interpretation that could have altered its impact in personal injury cases. We concluded that it was far better to recognize an independent strict liability action based on tort principles, which carries a tort statute of limitations, than it was to compromise the commercial code with unsound statutory construction.[9]

▉▉▉ The notice requirement of § 34–21–270(c)(i), W.S.1977 (U.C.C. § 2–607) is another requirement which causes difficulty in warranty actions for personal injury. The statute provides:

"(c) Where a tender has been accepted:
"(i) The buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy."

In *Western Equipment Company, Inc. v. Sheridan Iron Works, Inc.*, Wyo., 605 P.2d 806, 810 (1980), we held that this statute means what it says in cases involving commercial damages. Perhaps we could interpret the section so that it does not apply in personal injury cases. But such a construction might diminish the effectiveness of the notice requirement in the commercial context where it serves a useful purpose. Again, the best solution to this statutory dilemma is to recognize strict liability in tort as an independent cause of action to which the statute does not apply. See *Greenman v. Yuba Power Products, Inc.*, 59 Cal.2d 57, 27 Cal.Rptr. 697, 377 P.2d 897, 13 A.L.R.3d 1049 (1962).

▉▉▉ A third piece of excess baggage carried by the UCC warranty action is the doctrine of disclaimer of warranties. An injured person's warranty action may be barred if the seller has properly disclaimed all express and implied warranties. The drafters of the U.C.C. have attempted to solve this problem by providing in § 2–719 that "[l]imitation of consequential damages for injury to the person in the case of consumer goods is prima facie unconscionable but limitation of damages where the loss is commercial is not." Section 34–21–298(c), W.S.1977. Unfortunately, § 34–21–298(c) (U.C.C. § 2–719) is only a partial remedy because it applies only in cases of consumer goods. In the case at bar, where the scraper was not a consumer good, appellant's cause of action in warranty could have been barred by a disclaimer of warranty even though he did not personally bargain with the manufacturer and accept the disclaimer.[10] We have explicitly held that a remote buyer cannot prevent the manufacturer from disclaiming warranties in his original contract with the original buyer. *Western Equipment Company, Inc. v. Sheridan Iron Works, Inc.*, supra, 605 P.2d at 810. Strict liability in tort, however, is not hampered by the disclaimer

---

**9.** Several states that have adopted strict liability by statute have done so by explicitly amending their commercial codes. They have essentially stripped the commercial trappings—such as the statute of limitations, the notice requirement, and privity—from the warranty cause of action in personal injury cases. "The result is to provide a remedy as comprehensive as that provided by § 402A of the Restatement * * *." *Swartz v. General Motors Corporation*, 375 Mass. 628, 378 N.E.2d 61, 63 (1978); see generally Annot., 15 A.L.R.4th 791 (1982).

**10.** See § 34–21–909(a)(i), W.S.1977, for a definition of consumer goods.

problem because it is not based on express or implied warranties created by the U.C.C.

In summary, the cause of action for strict liability in tort is necessary because of the inadequacies of breach of warranty actions when applied to claims in tort for personal injury.

## PLEADING STRICT LIABILITY

Having decided that strict liability is a viable cause of action in Wyoming, we must next determine whether it was properly pled by appellant in his third claim for relief. Rule 8, W.R.C.P., establishes Wyoming as a notice pleading jurisdiction. Rule 8(a) states:

"A pleading which sets forth a claim for relief * * * shall contain (1) a short and plain statement of the claim showing that the pleader is entitled to relief, (2) a demand for judgment for the relief to which he deems himself entitled."

Rule 8(e)(1) requires only that "[e]ach averment of a pleading shall be simple, concise, and direct. No technical forms of pleading or motions are required." And perhaps most importantly, Rule 8(f) declares that "[a]ll pleadings shall be so construed as to do substantial justice."

Taken together, these provisions of Rule 8 require that plaintiff plead only sufficient facts to constitute a legal cause of action. *Harris v. Grizzle*, Wyo., 599 P.2d 580, 583 (1979). No particular words are required such as "strict liability" or "402A." Id.; *Zaleskie v. Joyce*, supra, 333 A.2d at 114 (applying Rule 8); *Boains v. Lasar Manufacturing Company*, 330 F.Supp. 1134 (D.Conn.1971) (also applying Rule 8). The essential elements of the cause of action must be raised, at least indirectly, by the plaintiff's factual allegations. *Harris v. Grizzle*, supra, at 583.

In the case at bar appellant was required to allege facts stating the following elements of the strict liability cause of action:

(1) That the sellers were engaged in the business of selling the product that caused the harm;

(2) that the product was defective when sold;

(3) that the product was unreasonably dangerous to the user or consumer;

(4) that the product was intended to and did reach the consumer without substantial change in the condition in which it was sold; and

(5) that the product caused physical harm to the plaintiff/consumer. Restatement, Second, Torts § 402A. See also *Rossignol v. Danbury School of Aeronautics, Inc.*, 154 Conn. 549, 227 A.2d 418, 424 (1967).

In his third cause of action, appellant alleged facts which indicated that appellees were engaged in the business of selling earth-moving equipment; that the scraper was unsafe for its intended use and defective in design; that the scraper was inherently dangerous to human life when sold; and that the defects in the scraper directly caused his injuries. The final element, that the scraper reached appellant without substantial change in the condition in which it was sold, is at least by implication contained in the pleadings. Appellees were given notice by the original pleading that strict liability would be an issue in the case. In responsive pleadings they alleged that the condition of the scraper had been altered after delivery. They presented affidavits and exhibits to support their defense of alteration of the product and relied upon this claim in support of their motion for summary judgment. As we pointed out earlier, a pleading must fairly give notice of the claim, but it does not have to contain key phrases like "strict liability," or "402A" to give such notice.

The Pennsylvania Supreme Court was faced with an extremely vague complaint when it first adopted strict liability in tort but the court held:

"Since the plaintiff has broadly pleaded those facts necessary to a cause of action for defective products liability and since we are today adopting a new basis of liability, plaintiff will be permitted to amend his complaint to explicitly state a cause of action in trespass for defective

products liability." *Webb v. Zern*, 422 Pa. 424, 220 A.2d 853, 854–855 (1966). We conclude that in this case the pleadings are sufficient to state a claim in strict liability.

## STATUTE OF LIMITATIONS FOR STRICT LIABILITY

Our only statute of limitations question is whether appellant's strict liability claim was timely when originally filed.

"In actions grounded on strict tort liability, it has generally been held that a statute of limitations applicable to torts, negligence, personal injury, property damage, or similar wrongful acts should apply." 3 R. Hursh & H. Bailey, American Law of Products Liability § 17:8, at 70 (2d ed. 1975); see also, Annot., 91 A.L.R.3d 455, 458–465 (1979); *Kirkland v. General Motors Corporation*, Okla., 521 P.2d 1353, 1361 (1974).

This is because actions based on § 402A are tortious rather than contractual in nature. *Adams v. Buffalo Forge Company*, Me., 443 A.2d 932, 940 (1982); Restatement, Second, Torts § 402A, comment m (1965). In Wyoming the general torts statute, § 1–3–105(a)(iv)(C), W.S.1977, governs strict liability claims. It establishes a four-year limitations period which runs from the date of injury. Appellant's strict liability claim, like his negligence claim, was timely filed.

## MATERIAL ALTERATIONS

Appellees claim on appeal that the uncontradicted exhibits which they attached to their summary judgment motion showed that the scraper had been materially altered prior to the accident. Therefore, according to appellees, they were entitled to summary judgment on all three causes of action as a matter of law. The district court based its grant of summary judgment, at least in part, upon this ground. In its order the court concluded " [t]hat counsel for the Plaintiff admitted during the argument to the Court that the machine in question had been altered prior to the accident."

We agree with appellee's general proposition that material or substantial alterations of a product after sale may constitute a defense to all three causes of action. Even if a product is defective, unmerchantable or negligently manufactured, the seller may not be liable for a plaintiff's injuries which are caused by unforeseeable alterations in the product rather than the original defects. See Annot., 41 A.L.R.3d 1251 (1972). In the context of strict liability, this defense has been explicitly conditioned in Restatement, Second, Torts § 402A(1)(b) which provides that a manufacturer or seller is liable under 402A only if his product "is expected to and does reach the user or consumer without substantial change in the condition in which it is sold." In negligence and warranty claims the material alterations defense is raised under the rubric of intervening or superseding cause. See generally W. Keeton, Prosser and Keeton on Torts § 102, at 710–712 (1984); Comment, Substantial Change: Alteration of a Product as a Bar to a Manufacturer's Strict Liability, 80 Dickinson L.Rev. 245, 264 (1975).

Our difficulty with appellees' material alteration contention is factual, not legal. While we accept appellees' uncontradicted assertion that the scraper was altered,[11] we do not think that appellees' exhibits eliminated all dispute regarding the materiality of those alterations. Appellees' summary judgment exhibits do not demonstrate how appellant actually slipped from the scraper and do not show what safety devices might have prevented the fall. And there is nothing in the record indicating that the safety devices which were removed would have been adequate to prevent the fall even if they had been left intact. Material altera-

11. In support of their motion, appellees offered depositions in which appellant outlined the various pieces of safety equipment on the scraper that had been altered since purchase. He described how friction tape had been worn away from a foothold and how a handhold and foothold had been removed. Moreover, at the hearing on the summary judgment motion, appellant's counsel admitted that there had been alterations in the scraper prior to the accident.

tions, like other issues of proximate cause, are ordinarily "'left to the jury for its factual determination.'" *McClellan v. Tottenhoff,* Wyo., 666 P.2d 408, 414 (1983); *Karabatsos v. Spivey Company,* 49 Ill. App.3d 317, 7 Ill.Dec. 158, 364 N.E.2d 319, 323 (1977). Appellees failed to establish the materiality of the alterations as a factual issue, so summary judgment on these grounds could not be granted as a matter of law, even though appellant failed to offer his own exhibits. See *Gibbs v. General Motors Corporation,* Tex., 450 S.W.2d 827, 829 (1970).

The district court's dismissal of appellant's second cause of action for breach of warranty is affirmed. The dismissal of the first and third causes is reversed, and the case is remanded for further proceedings consistent with this opinion.

BROWN, Justice, concurring in part; dissenting in part.

I agree with that stated in the majority opinion except that pertaining to strict liability. This is not an appropriate case to determine that strict liability in tort is a valid cause of action in Wyoming.

1) Appellant did not properly plead strict liability.

2) There had been a substantial alteration in the 657 scraper since its delivery to the user.

In appellant's first cause of action he purports to allege negligence in design, manufacture, inspection and the sale of the caterpillar model 657B. In his second cause of action appellant purports to state a cause of action for breach of express and implied warranties under the Uniform Commercial Code, § 34–21–101, et seq., W.S. 1977. Appellant contends, and the majority agree, that a cause of action for strict liability is stated in appellant's third cause of action. Actually, in his third cause of action, appellant merely restates some of the requirements for a breach of warranty action under the U.C.C.

Pleadings should give notice to an adverse party what he may encounter. *Watts v. Holmes,* Wyo., 386 P.2d 718

(1963). We have held that the simplification of pleadings under the Wyoming Rules of Civil Procedure does not eliminate the necessity of stating in clear terms the basis of relief sought. *Kearney Lake, Land & Reservoir Company v. Lake DeSmet Reservoir Company,* Wyo., 475 P.2d 548 (1970). The pleading party must give fair notice to the opposing party of the basis for relief. *Harris v. Grizzle,* Wyo., 599 P.2d 580 (1979). In his complaint appellant did not give appellees notice that strict liability was an issue.

The majority adopts Restatement (Second) of Torts § 402A (1965); subsection (1)(b) requires that the product "reach the user or consumer without substantial change in the condition in which it is sold." Appellant claims he fell from the scraper because of inadequate or defective safety devices. The alleged defects were:

1) Lack of proper hand grips and toeholds.

2) Lack of adequate non-skid surface materials.

3) A "buckle" or damage to the bumper upon which appellant stood.

In his deposition appellant admitted that the hand grips had been removed and the toehold modified after the machine came into the possession of the user. The non-skid tape was originally applied to the machine, but had worn off because of normal use or had been removed after it came into the user's possession. The "buckle" or damage to the bumper upon which appellant stood occurred after the machine came into the possession of the user. These changes pertain to the very safety features of which appellant complains. Therefore, it cannot logically be argued that these changes were not substantial and material. Substantial changes in the nature of the product precludes recovery under Restatement (Second) of Torts, § 402A(1)(b) (1965).

I would hold that appellant is precluded from asserting a strict liability claim under the circumstances of this case.